# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 21-62119-CIV-HUCK

OMEGA SA, *et al.*

        Plaintiffs,

vs.

COPYOMEGAWATCHES.CO, *et al.*

        Defendants.

_____/

## PLAINTIFFS' MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiffs Omega SA, Blancpain SA, Compagnie des Montres Longines, Francillon S.A., Glashütter Uhrenbetrieb GmbH, Hamilton International AG, Montres Breguet S.A., Rado Uhren AG, and Tissot SA (collectively "Plaintiffs"),[1] by and through their undersigned counsel, hereby move this Honorable Court for entry of final default judgment against Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants").[2] In support thereof, Plaintiffs submit the following Memorandum of Law.

## I.    INTRODUCTION

Plaintiffs initiated this action against Defendants through the filing of their Complaint for trademark counterfeiting and infringement (Count I), false designation of origin (Count II), cybersquatting (Count III), common law unfair competition (Count IV), and common law

---

[1] Plaintiffs are subsidiaries of The Swatch Group Ltd., which is one of the world's largest watch manufacturers.

[2] Plaintiffs filed their Notice of Voluntary Dismissal, Without Prejudice, as to Certain Defendants [ECF No. 22]. Accordingly, Plaintiffs' Motion only seeks judgment against the remaining Defendants identified on Schedule "A" hereto.

trademark infringement (Count V). Defendants are in default, and the prerequisites for a default judgment have been met.  As relief, Plaintiffs seek default judgment finding Defendants liable on all counts of Plaintiffs' Complaint. Plaintiffs pray such judgment includes the entry of a permanent injunction and awards of statutory damages to Plaintiffs for Defendants' willful counterfeiting pursuant to 15 U.S.C. § 1117(c) and cybersquatting pursuant to 15 U.S.C. § 1117(d). Plaintiffs also request the Court cancel, or at Plaintiffs' election, transfer the domain names at issue to Plaintiffs, assign all rights, title, and interest, to the Subject Domain Names to Plaintiffs, and permanently disable, delist, or deindex the Subject Domain Names from all search engines, in order to ensure the associated websites may no longer be used as a means for selling goods bearing counterfeits and infringements of Plaintiffs' trademarks and infringing upon Plaintiffs' rights.

II.     **STATEMENT OF FACTS**

    **A.     Plaintiffs' Rights.**

Plaintiffs are the owners of their respective federally registered trademarks identified in Paragraphs 4, 14, 24, 34, 44, 54, 64, and 74 ("Plaintiffs' Marks") of the Declaration of Antoine Haller in Support of Plaintiffs' Motion for Entry of Final Default Judgment ("Haller Decl."), which are valid and registered on the Principal Register of the U.S. Patent and Trademark Office. Plaintiffs' Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified therein. (See id.; see also Comp. Exs. 1 through 8 to the Complaint ("Plaintiffs' Trademarks Registrations"), [ECF Nos. 1-2 through 1-8]), incorporated herein by reference). Plaintiffs' Marks are symbols of Plaintiffs' quality, reputations, and goodwill and have never been abandoned. (See Haller Decl. ¶¶ 11–12; 21–22; 31–32; 41–42; 51–52; 61–62; 71–72; 81–82.) Moreover, Plaintiffs have expended substantial resources developing, advertising, and otherwise promoting their respective trademarks. (See id. at ¶¶ 8–9; 18–19; 28–

29; 38–39; 48–49; 58–59; 68–69; 78–79.) As such, Plaintiffs' Marks all qualify as famous marks as the term is used in 15 U.S.C. § 1125(c)(1).

Plaintiffs have extensively used, advertised, and promoted Plaintiffs' Marks in the United States in association with high-quality products, and have carefully monitored and policed the use of Plaintiffs' Marks. (See id. at ¶¶ 6–12; 16–22; 26–32; 36–42; 46–52; 56–62; 66–72; 76–82.) As a result of Plaintiffs' efforts, members of the consuming public readily identify products bearing Plaintiffs' Marks as being quality merchandise sponsored and approved by Plaintiffs. (See id.) Accordingly, Plaintiffs' Marks have achieved secondary meaning as identifiers of high-quality products.

**B.    Defendants' Infringing Acts.**

As alleged by Plaintiffs, admitted by default, and established by the evidence submitted herewith, Defendants operate or control the fully interactive, commercial Internet websites operating under the domain names identified in Schedule "A" hereto (the "Subject Domain Names").[3] As such, Defendants are the active, conscious, and dominant forces behind the promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing and/or using trademarks that are exact copies of one or more of Plaintiffs' Marks (the "Counterfeit Goods"). (See Compl. ¶¶ 15–24, 73; see also Haller Decl. ¶¶ 84–86; Gigante Decl. ¶ 2; see generally, relevant web pages

---

[3] Some Defendants use their Subject Domain Names to act as supporting domain names to direct traffic to their fully interactive, commercial websites operating under other Subject Domain Names, from which consumers can complete purchases. Some of the supporting domain names, when accessed directly, appear to be blog style or non-operating websites; however, when visited from a search engine such as Google, visitors are redirected to the fully interactive websites operating under other Subject Domain Names. Other supporting domain names either automatically redirect and forward to a fully interactive, commercial Internet website operating under one of the Subject Domain Names or redirect a consumer to a fully interactive, commercial Internet website operating under one of the Subject Domain Names upon clicking a product or link on the website. Accordingly, the web pages for the Subject Domain Names which operate as redirecting websites are included with the web pages to which those sites redirect, as shown in Composite Exhibit "9" to the Complaint. (See Declaration of Virgilio Gigante in Support of Plaintiffs' Motion for Entry of Final Default Judgment ("Gigante Decl.") ¶ 2, n.1.)

from Defendants' interactive commercial Internet websites operating under the Subject Domain Names displaying Plaintiffs' branded items offered for sale ("Defendants' Websites") attached as Comp. Ex. 9 to the Complaint [ECF Nos. 1-10 through 1-14], incorporated herein by reference.) Further, as admitted by Defendants through default, at all times relevant, Defendants have had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their exclusive rights to use and license such intellectual property and the goodwill associated therewith. (See Compl. ¶ 78.) Defendants do not have, nor have they ever had, the right or authority to use Plaintiffs' Marks for any purpose. (See Haller Decl. ¶¶ 84–85.) Despite their known lack of authority to do so, Defendants are engaging in the activity of promoting and otherwise advertising, selling, offering for sale, and distributing their Counterfeit Goods via their Internet websites operating under the Subject Domain Names. (See Compl. ¶¶ 15–24, 73, see also Haller Decl. ¶¶ 84–86; Defendants' Websites [ECF Nos. 1-10 through 1-14].)

Plaintiffs' evidence, obtained as a result of their investigation of Defendants, clearly demonstrates Defendants are engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and sale of goods bearing and/or using counterfeits of Plaintiffs' Marks. Plaintiffs' representative reviewed and visually inspected the various goods bearing Plaintiffs' Marks offered for sale by Defendants via the Internet websites operating under each of the Subject Domain Names and/or the websites to which those domain names either automatically or manually redirect, and determined the products were non-genuine, unauthorized versions of Plaintiffs' products. (See Haller Decl. ¶¶ 86–86.)

### C.    Procedural Background.

On October 12, 2021, Plaintiffs filed their Complaint for Injunctive Relief and Damages in this action against Defendants [ECF No. 1]. On October 18, 2021, Plaintiffs filed their *Ex Parte*

Motion for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) ("Motion for Alternate Service") [ECF No. 5],[4] which the Court granted on October 20, 2021 [ECF No. 7], authorizing Plaintiffs to serve the Summonses, Complaint, and all subsequent pleadings and discovery in this matter upon Defendants via electronic mail ("e-mail") and by posting copies of the same on Plaintiffs' serving notice website appearing at the URL http://servingnotice.com/Qs3o12/index.html. (Gigante Decl. ¶ 4.) Pursuant to the Court's Order Granting Motion for Alternate Service, Plaintiffs served Defendants with their respective Summons and a copy of the Complaint via e-mail and via website posting on November 4, 2021. (Gigante Decl. ¶ 5; see also [ECF No. 17], Proof of Service filed with the Court.)

The time allowed for Defendants to respond to the Complaint has expired. (See Gigante Decl. ¶ 6.)  Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other response. (See id. at ¶ 7.) To Plaintiffs' knowledge, Defendants are not infants or incompetent persons, and upon information and belief, the Servicemembers Civil Relief Act does not apply. (See id. at ¶ 8.)  On January 18, 2022, Plaintiffs filed their Request for Clerk's Entry of Default against Defendants [ECF No. 20], and the Clerk subsequently entered default against Defendants on January 18, 2022, for failure to appear, plead, or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure [ECF No. 21]. (See Gigante Decl. ¶ 9.)  Plaintiffs now move the Court to grant Final Default Judgment against Defendants.

## III.  **ARGUMENT**

### A.    **Default Judgment Should Be Entered Against Defendants.**

---

[4] Plaintiffs' Motion for Alternate Service, and the supporting declarations and exhibits attached thereto [ECF No. 5], are incorporated herein by reference.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. Personal jurisdiction over Defendants and venue in this district are proper under 28 U.S.C. § 1391 as Defendants direct business activities toward consumers within this district and cause harm to Plaintiffs' businesses through the fully interactive, commercial Internet websites operating under the Subject Domain Names. (Compl. at ¶¶ 2–3, 12, 15, 73.)

### 1.    Default Judgment is Proper.

A court may order a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) following the entry of default by the court clerk under Rule 55(a). See Fed. R. Cv. P. 55. Upon entry of default by the clerk, the well-pled factual allegations of a plaintiff's complaint, other than those related to damages, will be taken as true. PetMed Express, Inc. v. Medpets.com, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citing Buchanan v. Bowman, 820 F.2d 359 (11th Cir. 1987)). In this case, the Complaint, pleadings, and declarations filed in support of Plaintiffs' Motion for Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

### 2.    Factual Allegations Establish Defendants' Liability.

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." In order to prevail on their trademark infringement claim under Section 32 of the Lanham Act, Plaintiffs must demonstrate: (1) they had prior rights to the trademarks at issue, and (2) Defendants had adopted a mark or name that was the same, or confusingly similar to Plaintiffs' trademarks, such that consumers were likely to confuse the two. Planetary Motion, Inc. v.

Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 360 (11th Cir. 1997)).

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, Plaintiffs must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' Goods by Plaintiffs. 15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S. Ct. 2753, 2763 (1992).

Plaintiffs' Complaint also sets forth a cause of action for cybersquatting pursuant to the Anticybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. § 1125(d). To prevail under 15 U.S.C. § 1125(d), a plaintiff must demonstrate that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 Fed.Appx. 252, 256, 2006 WL 2847233, at *3 (11th Cir. 2006). See 15 U.S.C. § 1125(d).

Whether a defendant's use of a plaintiff's trademarks creates a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. See Planetary Motion, 261 F.3d at 1193 n.4 ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims."). Further, the test to determine trademark infringement

liability under Florida common law is the same as the likelihood of consumer confusion test outlined in § 32(a) of the Lanham Act. See PetMed Express, Inc., 336 F. Supp. 2d at 1217-18.

The well-pled factual allegations of Plaintiffs' Complaint, including specifically those pled in Paragraphs 15–24, 73–88, 60-62, 95–98, 102–106, 110–113, 117–119, and 123–125 properly allege the elements for each of the above claims. Moreover, the factual allegations in Plaintiffs' Complaint, substantiated by the evidence submitted herewith, conclusively establish Defendants' liability under each claim asserted in the Complaint. Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against each Defendant.

**B.      Plaintiffs' Requested Relief Should be Granted.**

**1.      Entry of a Permanent Injunction is Appropriate.**

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Burger King Corp. v. Agad, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. See, e.g., PetMed Express, Inc., 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction. See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive

relief.") Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin Defendants from continuing to infringe any of Plaintiffs' intellectual property rights, including Plaintiffs' Marks.

Permanent injunctive relief is appropriate where a plaintiff demonstrates (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest.  eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). As demonstrated herein, Plaintiffs' have clearly carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Defendants' actions merit permanent injunctive relief, not only to protect Plaintiffs' reputations, but also to protect consumers from being deceived as to the quality and source of products bearing and/or using Plaintiffs' Marks. The facts alleged in Plaintiffs' Complaint, substantiated by the evidence submitted herewith, shows Defendants are "continuously infringing and inducing others to infringe" Plaintiffs' Marks by using them to advertise, promote, sell, and offer to sell goods bearing marks which are identical or altered to be identical to Plaintiffs' Marks. (See Compl. ¶ 96; see also Haller Decl. ¶¶ 84–86; see generally Defendants' Websites [ECF Nos. 1-10 through 1-14].)

Plaintiffs are clearly suffering, and will continue to suffer, irreparable injury if Defendants' infringing activities are not permanently enjoined. (See Haller Decl. ¶ 90.)  In trademark cases, "a sufficiently strong showing of likelihood of confusion ... may by itself constitute a showing of a substantial threat of irreparable harm." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir.1998); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 986 (11th Cir.1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). In any

event, Plaintiffs' Complaint alleges that Defendants' unlawful actions have caused Plaintiffs irreparable injury, and will continue to do so if Defendants are not permanently enjoined. (See Compl. ¶ 92.)  Defendants have defaulted upon Plaintiffs' factual allegations in that respect.

Additionally, Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the Internet websites under the Subject Domain Names, because Plaintiffs will have no control of the quality of what appears to be their products in the marketplace. (See Compl. ¶ 91.) An award of monetary damages alone will not cure the injury to Plaintiffs' reputations and goodwill which will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, it can hardly be said that Defendants face hardship in refraining from their willful infringement of Plaintiffs' trademarks, whereas Plaintiffs face hardship from loss of sales and their inability to control their reputations. In reality, Defendants have no cognizable hardship, as they will be prohibited from selling counterfeit goods, which is an illegal act to begin with. Finally, the public has an interest in the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. See Chanel, Inc. v. besumart.com, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (alteration added) (citation omitted)); BellSouth Adver. & and Publ'g. Corp. v. Real Color Pages, Inc., 792 F. Supp. 775, 785 (M.D. Fla. 1991) (holding "[i]n a trademark infringement or unfair competition case, a third party, the consuming public is present and its interests are paramount."). Ultimately, a permanent injunction will prevent consumer confusion and deception in the marketplace and will protect Plaintiffs' property interest in their Marks, which are the touchstones of trademark law.

Furthermore, as admitted by Defendants through default, (i) the Subject Domain Names are essential components of Defendants' counterfeiting and infringing activities; and (ii) the

domain names themselves are the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs. (See Compl. ¶ 24.) Therefore, in order to effectuate the injunction as a practical matter, the Subject Domain Names owned, operated, and/or controlled by Defendants to engage in the business of promoting, advertising, offering for sale, and selling goods bearing and/or using counterfeits and infringements of Plaintiffs' Marks, should be ordered transferred to Plaintiffs' control by Defendants, their registrars, and/or registries. Further, Defendants, their agents or assigns, should be required to assign all rights, title, and interest, to their Subject Domain Names to Plaintiffs and instruct all search engines to permanently delist or deindex the Subject Domain Names. Absent such relief, Defendants will remain free to continue infringing Plaintiffs' trademarks with impunity and will continue to benefit from the Internet traffic to those websites built through the unlawful use of Plaintiffs' Marks.[5]

The Court's powers of equity are sufficiently broad to compel measures necessary to enforce an injunction against infringement.   See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition

_____

[5] See (ordering, *inter alia*, (i) assignment of all rights, title, and interest to defendants' domain names used to promote, offer for sale, and/or sell goods bearing counterfeits and/or infringements of plaintiff's trademarks to plaintiff, and (ii) permanent disablement, de-indexing or delisting of defendants' domain names from internet search engines). See also Chanel, Inc.  v. 5creplicachanel.com, Case 19-cv-62333-RKA (S.D. Fla. Dec. 20, 2019) (same); Gucci America, Inc. v. gucci-taschens.com, Case No. 19-cv-62026-WPD (S.D. Fla. Oct. 28, 2019) (same); Chanel, Inc. v. aaachanelsale.com, Case No. 19-cv-61225-WPD (S.D. Fla. July 15, 2019) (same); Goyard St-Honore  v. cheapfrancoisgoyabag.com, Case No. 19-cv-60320-KMW (S.D. Fla. June 26, 2019) (same); The North Face Apparel Corp. v. aothenorthface.com, Case No. 19-cv-60952-UU (S.D. Fla. June 24, 2019) (same).

of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name.  See 15 U.S.C. §§ 1125(d)(1)(C), (d)(2). However, the remedy is by no means limited to that context. See, e.g., Philip Morris USA v. Otamedia Ltd., 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (Yesmoke.com domain name transferred to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace."); Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (defendants ordered to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)). This Court and others have not hesitated to order the transfer of domain names when faced with factual scenarios similar to the one herein.[6]

---

[6] See e.g Crocs, Inc. v. Individual, P'ship, or Unincorporated Ass'n, No. 20-cv-62107-PCH (S.D. Fla. Dec. 21, 2020) (awarding transfer of domain names at issue as part of grant of permanent injunction); Gucci America, Inc. v. The Individual, P'ship, or Unincorporated Ass'n, 19-cv-62886-PCH (S.D. Fla. Feb. 26, 2020) (same); Chanel, Inc. v. The Individual, P'ship, or Unincorporated Ass'n, 19-cv-62681-PCH (S.D. Fla. Dec. 27, 2019) (same); Chanel, Inc. v. chanelpurse.ru, Case No. 18-cv-62500-PCH (S.D. Fla. Dec. 12, 2018) (same); America, Inc. v. 1to1handbags.com, Case No. 16-cv-62839-PCH (S.D. Fla. March 2, 2017) (same); Chanel, Inc. v. jhonshop.com, Case No. 16-cv-62717-PCH (S.D. Fla. Jan. 20, 2017) (same); Cassegrain, Inc. v. longchampsalevip.com, Case No. 13-cv-23576-PCH (S.D. Fla. Feb. 12, 2014 (same); Abercrombie & Fitch Trading Co. v. 60discountoutlet.com, Case No. 13-cv-23618-PCH (S.D. Fla. Feb. 12, 2014) (same).  See also Richemont Int'l SA v. swisscartier.cn, No. 18-60662-Civ, 2018 U.S. Dist. LEXIS 221656 (S.D. Fla. Nov. 15, 2018) (Scola, R.) (same); adidas AG v. 2017nmdshoes.us, No. 18-cv-61176, 2018 U.S. Dist. LEXIS 216790 (S.D. Fla. July 31, 2018) (Bloom, B.) (same); Cartier Int'l A.G. v. Replicapaneraiwatches.cn, No. 17-cv-62401, 2018 U.S. Dist. LEXIS 188943 (S.D. Fla. Apr. 2, 2018) (Moore, K.) (same); Abercrombie & Fitch Trading Co. v. Abercrombieandfitchsale.us, No. 17-cv-60394, 2017 U.S. Dist. LEXIS 212911 (S.D. Fla. Aug. 16, 2017) (Gayles, J.) (same); adidas AG v. 2013-adidasjeremyscott.com, No. 14-60305-Civ, 2014 U.S. Dist. LEXIS 189251 (S.D. Fla. Aug. 12, 2014) (Scola, J.) (same); Under Armour, Inc. v. 51nfljersey.com, No. 13–62809–CIV, 2014 U.S. Dist. LEXIS 56475 (S.D. Fla. Apr. 23, 2014) (Rosenbaum, J.) (same); Tiffany (NJ), LLC v. attiffany.com, No. 13-cv-61837, 2014 U.S. Dist. LEXIS 186957 (S.D. Fla. Jan. 27, 2014) (Zloch, W.) (same).

Defendants have created an Internet-based counterfeiting scheme and are profiting from their deliberate misappropriation of Plaintiffs' rights. Accordingly, the Court should eliminate the means by which Defendants are conducting their unlawful activities by transferring and assigning all rights, title, and interest to the Subject Domain Names to Plaintiffs, and delisting or deindexing the Subject Domain Names from any Internet search engine, to further prevent the use of these instrumentalities of infringement.

### 2.    Damages - Count I for Trademark Counterfeiting and Infringement.

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1).  In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs elect to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to set an amount of statutory damages. PetMed Express, Inc., 336 F. Supp. 2d at 1219 (citing Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990)).  Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."). Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost

impossible to ascertain. <u>See, e.g.</u>, S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); <u>see also</u> <u>PetMed Express, Inc.</u>, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. <u>PetMed Express, Inc.</u>, 336 F. Supp. 2d at 1220.  A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. <u>See</u> <u>Arista Records, Inc. v. Beker Enter., Inc.</u>, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. <u>See</u> <u>PetMed Express, Inc.</u>, 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true). In either case, a defendant is deemed to have the requisite knowledge that its acts constitute an infringement.

Plaintiffs' Marks are renowned worldwide as identifiers of high-quality merchandise, and the fact that Defendants offered for sale and sold goods using marks which are identical or altered to be identical to such strong marks shows their desire and purpose to trade upon Plaintiffs' goodwill.  In any event, in a case of clear-cut copying such as this, it is appropriate to infer that Defendants intended to cause confusion and benefit from Plaintiffs' reputation to Plaintiffs' detriment. <u>See</u> <u>PetMed Express, Inc.</u>, 336 F. Supp. 2d at 1220 (court infers intent to confuse consumers into believing affiliation from Defendants' use of such a mark that was confusingly similar). In this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" <u>Turner Greenberg Assocs.</u>, 320 F. Supp.

2d 1317, 1333 (S.D. Fla. 2004) (citing <u>Carnival Corp. v. Seaescape Casino Cruises, Inc.</u>, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).

Ultimately, the evidence clearly establishes that each Defendant intentionally copied one or more of Plaintiffs' Marks for the purpose of deriving the benefit of Plaintiffs' world-famous reputation, and Defendants defaulted on Plaintiffs' allegations of willfulness. (Compl. ¶ 80.) <u>See Arista Records, Inc.</u>, 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the defendants' default). As such, this Court should award a significant amount of statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities.

Based on the above considerations, Plaintiffs respectfully request the Court award statutory damages against each Defendant. The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one (1) type of good bearing at least one (1) mark which is in fact a counterfeit of one of Plaintiffs' Marks.  (Compl. ¶¶ 73–81, 95–97; Haller Decl. ¶¶ 84–86; <u>see generally</u> Defendants' Websites [ECF Nos. 1-10 through 1-14].) And, as noted above, based upon the evidence Plaintiffs have presented, it is reasonable to infer Defendants' infringement was willful. As such, Plaintiffs are requesting a statutory damage award of one million dollars ($1,000,000.00) per mark, per type of good. As each Defendant used at least one counterfeit mark on one type of good, Plaintiffs request a statutory damage award in the amount of $1,000,000.00 against each Defendant as partial compensation to Plaintiffs and to deter Defendants and others from continuing to counterfeit Plaintiffs' trademarks.

Plaintiffs' requested damage amount is well within the permissible range prescribed under 15 U.S.C. § 1117(c)(2) and should be sufficient to meet the stated goals of 15 U.S.C. § 1117(c) to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs'

trademarks, compensate Plaintiffs, and punish Defendants. Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; PetMed Express, Inc., 336 F. Supp. 2d at 1222 ("statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct."). This Court and others have granted statutory damages under the Lanham Act similar to or higher than Plaintiffs' request herein.[7]

### 3.      Damages - Count II for False Designation of Origin.

Plaintiffs' Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II should be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

---

[7] See, e.g., Crocs, Inc. v. Individual, P'ship, or Unincorporated Ass'n, No. 20-cv-62107-PCH (S.D. Fla. Dec. 21, 2020) (awarding Plaintiff $100,000.00 against each Defendant); Chanel, Inc. v. The Individual, P'ship, or Unincorporated Ass'n, 19-cv-62681-PCH (S.D. Fla. Dec. 27, 2019) (awarding Plaintiff $100,000.00 against each Defendant); Chanel, Inc. v. chanelpurse.ru, Case No. 18-cv-62500-PCH (S.D. Fla. Dec. 12, 2018) (same); America, Inc. v. 1to1handbags.com, Case No. 16-cv-62839-PCH (S.D. Fla. March 2, 2017) (same); Chanel, Inc. v. jhonshop.com, Case No. 16-cv-62717-PCH (S.D. Fla. Jan. 20, 2017) (same). See also Louis Vuitton Malletier v. The Individual, P'ship, or Unincorporated Ass'n, Case No. 20-cv-61122-CMA (S.D. Fla. Aug. 12, 2020) (entry of statutory damages award using $120,000.00 per counterfeited mark per type of good sold per Defendant); Chanel, Inc. v. Replicachanelbag, 362 F. Supp. 3d 1256 (S.D. Fla. 2019) (Bloom, B.) (awarding Plaintiff $1,000,000.00 against each Defendant); Malletier v. Individuals, P'ship, No. 19-cv-61021-MGC, 2019 U.S. Dist. LEXIS 225874 (S.D. Fla. Dec. 12, 2019) (same); Fendi S.R.L. v. Joe Bag, No. 19-cv-61356-RAR, 2019 U.S. Dist. LEXIS 169132 (S.D. Fla. Aug. 28, 2019) (same); Richemont Int'l SA v. swisscartier.cn, No. 18-60662-Civ, 2018 U.S. Dist. LEXIS 221656 (S.D. Fla. Nov. 15, 2018) (Scola, J.) (same); Accord Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns, Case No. 19-cv-63068-KMW (S.D. Fla. Feb. 24, 2020) (same); Tiffany (NJ) LLC v. Individuals, P'ships & Unincorporated Ass'ns, Case No. 19-cv-61294-RKA (S.D. Fla. Aug. 16, 2019) (same); YETI Coolers, LLC v. allramblerdeal.com, Case No. 18-cv-62811-WPD (S.D. Fla. May 31, 2019) (same); Louis Vuitton Malletier, S.A. v. beltteen, Case No. 18-cv-62871-JIC (S.D. Fla. Mar. 22, 2019) (same).

### 4.      Damages - Count III for Cybersquatting.

Plaintiffs' Complaint further sets forth a cause of action for cybersquatting pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §1125(d).  As admitted by default, and established by the evidence submitted herewith, Defendant Numbers 5, 7, 8, and 15 (collectively the "Cybersquatting Defendants") have acted with the bad faith intent to profit from Plaintiffs' Marks and the goodwill associated with Plaintiffs' Marks by registering their corresponding Subject Domain Names identified on Schedule "B" hereto, (collectively the "Cybersquatted Subject Domain Names") which are identical, confusingly similar to, or dilutive of at least one of Plaintiffs' Marks. (Compl. ¶¶ 82–88, 110–113.)  The Cybersquatted Subject Domain Names incorporate one or more of Plaintiffs' trademarks in their entirety surrounded by descriptive or generic terms, rendering the domain name nearly identical to one or more of Plaintiffs' Marks. Even minor variations to a plaintiff's mark in a domain name can be confusingly similar. See Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ("taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law."); DaimlerChrysler v. The Net Inc., 388 F.3d 201, 205-06 (6th Cir. 2004) ("Courts generally have held that a domain name that incorporates a trademark is 'confusingly similar to' that mark if 'consumers might think that [the domain name] is used, approved, or permitted' by the mark holder."). Furthermore, it is indisputable that Plaintiffs' Marks are famous and distinctive and enjoy widespread recognition and are prominent in the minds of the consuming public.

As to the issue of bad faith, the ACPA lists nine factors for courts to consider in determining whether a domain name has been registered or used in "bad faith" with an intent to profit from a mark in registering or using the mark in a domain name. See 15 U.S.C. § 1125(d)(1)(B)(i); Taverna

Opa Trademark Corp., 2010 WL 1838384, at *2.  The nine factors are not meant to be exclusive and the Court may consider the context of the matter in making a determination of bad faith.  See Victoria's Cyber Secret Ltd. P'ship, 161 F. Supp. 2d at 1347. An examination of the relevant bad faith factors compels the conclusion that Defendants' registration and use of the Cybersquatted Subject Domain Names violates 15 U.S.C. § 1125(d).

The first and third factors, § 1125(d)(1)(B)(I) and (III), are clearly present inasmuch as the Cybersquatting Defendants have no rights in Plaintiffs' Marks, and the Cybersquatting Defendants have never used Plaintiffs' Marks in connection with a bona fide offering of goods or services. Additionally, the fourth, fifth, and ninth factors, § 1125(d)(1)(B)(IV), (V) and (IX), weigh in Plaintiffs' favor.  As discussed above, the Cybersquatting Defendants have clearly intentionally incorporated one or more of Plaintiffs' Marks in their domain names to divert consumers looking for Plaintiffs' Internet websites to their own Internet websites for commercial gain. Such consumers are likely to be confused as to the source and sponsorship of the Cybersquatting Defendants' Internet websites and mistakenly believe the websites are endorsed by and/or affiliated with Plaintiffs. Clearly, the Cybersquatting Defendants' registration of the Cybersquatted Subject Domain Names, to promote and/or offer for sale counterfeit and infringing versions of Plaintiffs' branded goods, knowing the domain names are identical or confusingly similar to Plaintiffs' indisputably famous and distinctive marks ensures a likelihood of confusion among consumers.  See House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 13 (October 25, 1999) ("The more distinctive or famous a mark has become, the more likely the owner of that mark is deserving of the relief available under this act.").

Upon a finding of liability, the ACPA expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."

15 U.S.C. § 1125(d)(1)(c); <u>Victoria's Cyber Secret Ltd. P'ship</u>, 161 F. Supp. 2d at 1356. Accordingly, Plaintiffs are entitled to the transfer and ownership of the Cybersquatted Subject Domain Names because they are confusingly similar to Plaintiffs' Marks. <u>See id.</u> at 663. Additionally, Plaintiffs may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just.  15 U.S.C. § 1117(d).  Plaintiffs' elect statutory damages and submit that in view of the Cybersquatting Defendants' intentional, wrongful behavior, an award in the amount of $10,000.00 against each of the Cybersquatting Defendants for each of their respective Cybersquatted Subject Domain Names, as outlined on Schedule "B" hereto, would be just.  <u>See Taverna Opa Trademark Corp.</u>, 2010 WL 1838384, at *3 (awarding $10,000.00 in statutory damages for the infringing domain name at issue); <u>see also, Crocs, Inc. v. Individual, P'ship, or Unincorporated Ass'n</u>, No. 20-cv-62107-PCH (S.D. Fla. Dec. 21, 2020) (same).

### 5.   Damages - Count IV for Common Law Unfair Competition and Count V for Common Law Trademark Infringement

Plaintiffs' Complaint also sets forth a cause of action under Florida's common law of unfair competition (Count IV) and Florida's common law trademark infringement (Count V). Plaintiffs submit that judgment on Count IV and Count V should also be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court enter final default judgment and a permanent injunction against Defendants in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

Dated: January 27, 2022.        Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Virgilio Gigante** _____
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiffs

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Defendant Number | Defendant / Subject Domain Name |
|---|---|
| 5 | luxurylongines.com |
| 5 | bestclock.cn |
| 5 | hotreplicas.net |
| 7 | omegachat.me |
| 8 | omegasweden.org |
| 8 | dreampanerai.com |
| 8 | exactreplica.net |
| 8 | fakeswiss.com |
| 8 | mrepwatches.com |
| 8 | paywatches.net |
| 8 | watchocean.net |
| 15 | top10omega.com |
| 19 | aaaforum24.com |
| 19 | watchesprouk.com |
| 20 | aaa-replica.com |
| 20 | cryo-watch.com |
| 20 | hellorolex.so |
| 20 | hqreplicas.com |
| 20 | luxpanerai.com |
| 20 | nurrawatches.com |
| 20 | payreplicawatch.com |
| 20 | repswatch.org |
| 20 | sitewatches.com |
| 20 | uswisssale.net |
| 27 | amazingclock.org |
| 28 | anyswisswatch.net |
| 28 | cheapestreplicas.com |
| 28 | cheapukwatch.com |
| 28 | clockswatch.com |
| 28 | coswatch.org |
| 28 | enwatch.org |
| 28 | swissmall.biz |
| 30 | apwatchchat.com |
| 30 | bestintimes.me |
| 38 | bassreplica.com |
| 40 | bestenuhren.net |
| 40 | bestenuhrens.com |
| 40 | detimer.net |

| 40 | linkpops.net |
|----|--------------|
| 40 | voila-uhren.de |
| 42 | bestreplica.me |
| 42 | okreplicawatch.com |
| 52 | billigeklokker.com |
| 55 | chargewatch.net |
| 55 | emyoku.com |
| 55 | farleftwatch.org |
| 55 | multiluxury.com |
| 55 | replica-watch.net |
| 55 | taywatches.com |
| 55 | watchindiscount.com |
| 55 | watchpig.com |
| 56 | chattimes.me |
| 62 | chopardforum.com |
| 65 | cinwatches.me |
| 67 | clocktowerss.com |
| 67 | kuvarsit.co |
| 67 | replicaukonline.com |
| 67 | rmskull.com |
| 69 | cmblogwatch.net |
| 69 | menwatchessell.com |
| 74 | dilussotime.com |
| 74 | italiaperfette.com |
| 74 | yoorologi.it |
| 76 | dpanwatch.com |
| 77 | e-efore.com |
| 79 | fakewatch.co |
| 79 | rolexforsale.me |
| 82 | faussefr.com |
| 82 | luxerepliquesmontre.com |
| 83 | findbestwatch.net |
| 83 | replica4luxury.net |
| 83 | replicapro.com |
| 86 | gradeclonewatch.com |
| 86 | innotizen.com |
| 86 | proswisswatch.net |
| 89 | holapanerai.me |
| 90 | holatime.me |
| 91 | hollywatches.org |
| 98 | ireplicas.com |
| 104 | luxuryreplicawatch.com |
| 115 | okfakewatches.com |

| 120 | parsin.me |
|-----|-----------|
| 121 | perfake.me |
| 123 | popwatch.org |
| 123 | tswatches.me |
| 124 | ppfake.net |
| 126 | puretime03.me |
| 127 | puretimes.me |
| 150 | repsswiss.com |
| 150 | usjaeger.com |
| 150 | watchesclocks.me |
| 156 | skytime.biz |
| 158 | swetawatch.org |
| 167 | timepiecebuy.org |
| 168 | timereps.org |
| 174 | tttime.co |
| 176 | usreplicas.com |
| 178 | vreplicawatches.com |
| 182 | watchesgentian.com |
| 195 | watchma.me |
| 198 | zowatch.com |

**SCHEDULE "B"**
**CYBERSQUATTING DEFENDANTS BY NUMBER AND**
**CYBERSQUATTED SUBJECT DOMAIN NAME**

| Defendant Number | Cybersquatting Defendant | Infringing Subject Domain Name(s) | Requested Statutory Damage Award |
|---|---|---|---|
| 5 | luxurylongines.com | luxurylongines.com | $10,000.00 |
| 7 | omegachat.me | omegachat.me | $10,000.00 |
| 8 | omegasweden.org | omegasweden.org | $10,000.00 |
| 15 | top10omega.com | top10omega.com | $10,000.00 |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 27th day of January, 2022, upon the Defendants via the e-mail to the e-mail addresses at which the Defendants were served and/or via posting on Plaintiffs' Internet website appearing at the URL http://servingnotice.com/Qs3o12/index.html.

**<u>Virgilio Gigante</u>**
Virgilio Gigante